**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| STEPHON WOODLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No. 19 CV 50136 |
| | ) | |
| | ) | Hon. John Robert Blakey |
| | ) | |
| | ) | Honorable Lisa A. Jensen |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| DR. RITZ, | ) | |
| | ) | |
| Defendant. | ) | |

**DR. STEPHEN RITZ'S ANSWER AND AFFIRMATIVE DEFENSES
TO PLAINTIFF'S COMPLAINT**

NOW COMES Defendant, DR. STEPHEN RITZ, through his attorneys, BOLLINGER CONNOLLY KRAUSE, LLC, and for his Answer and Affirmative Defenses to Plaintiff's Complaint at Law, states as follows:

Stephon Woodley was an inmate at Dixon Correctional Center. He suffers from Stargardt's disease, a genetic condition that has left him legally blind. For years, doctors recognized his condition and uniformly prescribed that he be given certain visual aids. These aids were designed to help Mr. Woodley regain some of his sight so that he can perform basic tasks of everyday living, and they are needed to prevent further damage to his eyes, as well as protect him from the constant risk of injury to his body. The defendant, however, ignored these recommendations and refused to provide basic visual aids to Mr. Woodley.

**ANSWER: Defendant admits that Stephon Woodley has been an inmate at Dixon Correctional Center. Defendant denies that any visual aids are needed to prevent further damage to his eyes. Defendant denies that he ignored any recommendations and denies that he refused to provide basic visual aids to Mr. Woodley. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.**

Doctors prescribed multiple visual aids, including a portable digital magnifier, a folding cane, lighting, and a small distance "monocular" scope, which would allow Mr. Woodley to regain some distance vision and depth perception and help him safely navigate within the prison. Dr. Ritz acknowledged that Mr. Woodley should have these visual aids, but refused to provide it based on circular reasoning worthy of Catch-22: Dr. Ritz would not approve acquisition of the aids without knowing that prison security will approve them, and prison security will not approve the aids until it has had a chance to inspect them. Because Dr. Ritz refused permit the aids to be acquired so prison security could inspect them, Mr. Woodley never received the aids until he brought a federal lawsuit to force their acquisition, *see Woodley v. Baldwin, 3:18-cv50050 (N.D. Ill.)*.

**<u>ANSWER</u>: Defendant admits that Woodley received the aids after the filing date of *Woodley v. Baldwin, 3:18-cv50050 (N.D. Ill.)*.  Defendant denies the remaining allegations of this paragraph.**

## JURISDICTION AND VENUE

1. This Court has jurisdiction over Plaintiffs claims pursuant to 28 U.S.C. § 1331.

**<u>ANSWER:</u>   Defendant Dr. Ritz admits that the court has jurisdiction under 28 U.S.C. § 1331 for Count I but denies any liability in this matter.**

2. Venue is proper pursuant to 28 U.S.C. § 1391 because the events giving rise to this action occurred in the Northern District of Illinois, Western Division.

**<u>ANSWER:</u>   Defendant Dr. Ritz admits the venue is proper for alleged events at Dixon Correctional Center but denies any liability in this matter.**

## PARTIES .

3. Plaintiff Stephon Woodley is a resident of Illinois. During the times relevant to this action, he was an inmate in Dixon Correctional Center in Dixon, Illinois. As of the filing of this complaint, Mr. Woodley is no longer incarcerated.

**ANSWER:** **Defendant Dr. Ritz admits that Plaintiff was an inmate in Dixon Correctional Center in Dixon, Illinois, but he lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.**

4.     Defendant Dr. Ritz was or is an employee of Wexford Health Sources, Inc., which contracts to provide medical services to Illinois Department of Corrections, including Mr.

Woodley. He is sued in his individual capacity.

**ANSWER:** **Defendant Dr. Ritz admits that at certain times he was employed by Wexford Health Sources, Inc. Defendant Dr. Ritz lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.**

## FACTS

### Plaintiff's Visual Impairment

5.     Stephon Woodley was inmate at Dixon Correctional Center. He suffers from a condition called Stargardt macular dystrophy, also referred to as Stargardt's disease, or "STGD."

**ANSWER:** **Defendant Dr. Ritz only admits that Plaintiff Woodley was an inmate at Dixon Correctional Center  but denies the remaining allegations of this paragraph.**

6.     STGD is a genetic eye condition that causes progressive vision loss by damaging the eye's retina. STGD's onset begins in the late teens or early adulthood. It affects an area near the center of the retina, called the macula. The macula is responsible for sharp central vision, which is needed for tasks such as reading, mobility, and recognizing faces. In people suffering from STGD, the cells in the macula become damaged and degraded over time. This causes a person with STGD to lose their central vision, and leaves them legally blind. In addition to central vision Loss, people with STGD have problems seeing anything without bright lights.

**ANSWER:** **Defendant admits that STGD is a genetic eye condition that can cause progressive vision loss by damaging the eye's retina.  Defendant admits that STGD can begin in the late teens or early adulthood.  Defendant admits that it affects an area near the center of the retina, called the macula.  Defendant admits that the macula is responsible for sharp central vision.  Defendant admits that in people suffering from STGD, the cells in the macula can become damaged and degraded over time.  Defendant admits that persons with**

3

**STGD who lose their central vision can be legally blind. Defendant denies the remaining allegations of this paragraph.**

7.      There is no known cure for STGD, and it cannot be corrected with eyeglasses or simple magnification. There are devices, however, that can be used to restore to a person suffering from STGD some limited, critical functions. A special, high-power digital magnifier and bright lights can allow people with STGD to regain some "near-vision" (for tasks like reading), and devices like walking canes and small "monocular" scopes can allow for distance vision and depth perception, making safer mobility possible.

**ANSWER:    Defendant admits that there is no known cure for STGD and admits that it cannot be corrected with eyeglasses or simple magnification. Defendant denies that there are devices that can restore a person suffering from STGD some limited critical functions. Defendant denies that a special high-power digital magnifier and bright lights can allow people with STGD to regain some "near-vision" (for tasks like reading). Defendant denies the remaining allegations of this paragraph.**

8.      During his incarceration, on-site doctors recognized that Mr. Woodley suffered from STGD, and referred him to the University of Illinois-Chicago Low Vision Clinic ("the UIC Low Vision Clinic") to determine what visual aids he needed in order to function with the limited vision that he had left.

**ANSWER:    Defendant admits that on-site doctors referred Mr. Woodley to the University of Illinois-Chicago Low Vision Clinic. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.**

9.      Dr. Joan Stelmack at the UIC Low Vision Clinic prescribed that Mr. Woodley be provided with a hand-held portable digital magnifier, which is a specialized device with high magnification power and other features which allow persons suffering from STGD to see, along with a light in his cell to aid with reading and other near-vision tasks, a small optical "monocular" scope to help him see in the distance, and a folding cane to assist him with mobility around prison and around his cell. (This Complaint hereinafter refers to these items collectively as the "Visual Aids.")

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

10.     Shortly after his appointment at the UIC Low Vision Clinic, Mr. Woodley was seen at Dixon Correctional Center's healthcare unit to follow up on the recommendations made by the clinic. At that appointment, healthcare professionals at Dixon Correctional Center concurred with each the UIC Low Vision Clinic's recommendations that Mr. Woodley be provided with each of the Additional Visual Aids.

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.**

11.     Dr. Ritz, however, overrode that recommendation. On information and belief, Dr. Ritz is a supervising doctor with Wexford, and his duties include approving recommendations for care through Wexford's "collegial review" process. When Dixon doctors submitted their approval of the UIC Low Vision Clinic's recommendations, Dr. Ritz rejected the recommendation based on the following logic: Wexford would not purchase the Visual Aids for inspection without knowing that the prison's security would approve them—but the prison's security screeners could not approve the Visual Aids until they had been inspected. Therefore, Dr. Ritz concluded, he would not approve Wexford's acquisition any of the visual aids recommended by the UIC Low Vision clinic and the doctors at Dixon. This circular reasoning ensured that Mr. Woodley would never receive the aids, even though they had specifically been recommended by medical professionals.

**ANSWER:** **Defendant admits that he is a doctor with Wexford and that his duties include approving care through Wexford's "collegial review" process. Defendant denies the remaining allegations of this paragraph.**

12.     In short, despite the uniform recommendations of Dr. Joan Stelmack of UIC Low Vision Clinic and the doctors at Dixon, Dr. Ritz refused or failed to provide Mr. Woodley with the basic visual aids he required to address the severe visual impairment he suffered from STGD.

**ANSWER:** **Defendant denies the allegations of this paragraph.**

13. Dr. Ritz's failure to provide Mr. Woodley with the Visual Aids impaired Mr. Woodley's ability to perform the basic activities of daily living. The lack of additional lighting in Mr. Woodley's cell worsened his ability to see anything there, causing constant injury and hampering basic activities of everyday living like keeping a tidy cell, brushing teeth, using the restroom hygienically, sleeping comfortably with clean bedclothes, clothing himself in the morning, and maneuvering around the cell uninjured. Without the additional light Mr. Woodley had increased difficulty with all these tasks, and repeatedly injured himself as he tried to move about his cell.

**ANSWER:** **Defendant denies that any alleged failure to provide visual aids impaired Mr. Woodley's ability to perform the basic activities of daily living. Defendant denies the remaining allegations of this paragraph.**

14. The lack of a folding cane and a monocular scope for distance vision also limited Mr. Woodley's ability to safely navigate around the prison and take advantage of various services offered to inmates, including program services, religious services, therapeutic services and recreation. Mr. Woodley instead had to wait for those times when an ADA aide was available, and such aides frequently were not present or were not helpful in going where Mr. Woodley needed to go. Furthermore, even with an aide the lack of the cane and monocular scope meant that Mr. Woodley inevitably injured himself running into or tripping over objects around the prison. This made it more difficult, painful, and dangerous for Mr. Woodley to take advantage of the services that the prison offers.

**ANSWER:** **Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.**

15. *Eye damage*. The defendants' failure to provide Mr. Woodley with visual aids compounded Mr. Woodley's vision loss by causing strain and additional damage to his eyes. Without the visual aids, Mr. Woodley's eyes naturally strained themselves to compensate for his degraded vision. This strain caused further damage to Mr. Woodley's retina. It was also painful, causing headaches and throbbing pain in Mr. Woodley's eyes, for which Mr. Woodley was prescribed pain medication by Dixon's medical staff.

**ANSWER:** **Defendant denies the allegations of this paragraph.**

16. *Physical injuries*. The Visual Aids were prescribed to Mr. Woodley in part so that he could safely navigate around the prison and his own cell. Without them, Mr. Woodley suffered constant injuries by banging into objects all over the prison, as described herein. He suffered these injuries multiple times per day, and his shins are scarred up and down by the injuries. Indeed, one Dixon doctor made a note of these injuries in the context of Mr. Woodley's need for the Visual Aids, and the doctor requested the Visual Aids specifically in light of these injuries. Dr. Ritz nevertheless refused to provide the requested aids.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.**

17. For this reason alone, in failing to provide Mr. Woodley with the visual aids he was prescribed, the defendants were deliberately indifferent to a serious medical need.

**ANSWER: Defendant denies that he was deliberately indifferent to Mr. Woodley. Defendant denies that provision of visual aids is a serious medical need. Defendant denies the remaining allegations of this paragraph.**

## Count One .

### Eighth Amendment to the United States Constitution

18. Each paragraph of this complaint is incorporated as if fully restated here.

**ANSWER: Defendant incorporates his answers to paragraphs 1 through 17 as and for his answer to this paragraph 18.**

19. Mr. Woodley had a serious medical need in that, because he suffers from STGD, he required visual aids in order to avoid strain to his eyes that damages his eyes and causes pain.

**ANSWER: Defendant denies that visual aids is a serious medical condition. Defendant denies that Mr. Woodley had eye strain to his eyes. Defendant denies that strain to Mr. Woodley's eyes caused damage. Defendant denies that strain to Mr. Woodley's eyes causes pain. Defendant lacks knowledge or information sufficient to form a belief about the allegations that Mr. Woodley suffers from STGD. Defendant denies the remaining allegations of this paragraph.**

20.     Mr. Woodley had a serious medical need in that, because he suffers from STGD, he required visual aids to prevent him from injuring himself as he attempted to navigate the prison and being able to live in hygienic conditions in his cell.

**ANSWER:     Defendant denies that Mr. Woodley had a serious medical need.  Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.**

21.     Dr. Ritz was aware of facts from which the inference could be drawn, and he drew the inference, that a substantial risk of serious harm existed if Mr. Woodley did not receive the visual aids he required.

**ANSWER:     Defendant denies a substantial risk of harm existed if Mr. Woodley did not receive visual aids.  Defendant denies that he was aware of any facts from which an inference could be drawn and denies drawing any such inference that Mr. Woodley was at a substantial risk of serious harm if Mr. Woodley did not receive visual aids.  Defendant denies that Mr. Woodley required visual aids to avoid a substantial risk of serious harm.**

22.     Notwithstanding the facts of which he was aware, Dr. Ritz failed or refused to provide Mr. Woodley with the visual aids he required, exhibiting deliberate indifference to a serious medical need.

**ANSWER:     Defendant denies that Mr. Woodley had a serious medical need.  Defendant denies exhibiting deliberate indifference at any time.  Defendant denies he failed or refused to provide Mr. Woodley with visual aids.  Defendant denies the remaining allegations of this paragraph.**

23.     Mr. Woodley has been injured as a result of this failure or refusal to provide him with visual aids, as described elsewhere in this complaint.

**ANSWER:     Defendant denies that Mr. Woodley has suffered any injury.  Defendant denies he failed or refused to provide Mr. Woodley with visual aids and denies that any such alleged failure or refusal to provide visual aids caused injury.**

WHEREFORE, Plaintiff Stephon Woodley respectfully requests that he be granted the following relief:

1.     Award actual damages for injuries suffered by Mr. Woodley from damage to his eyes as a result of being deprived the visual aids described herein.

2.     Award actual damages for the physical injuries suffered by Mr. Woodley as a result of hurting himself while attempting to navigate in the prison, for want of visual aids described herein.

3.     Award punitive damages against the defendant.

4.     Award costs and attorney's fees.

5.     Award all other relief that is just and proper.

**<u>ANSWER</u>: Defendant Dr. Stephen Ritz, denies that Plaintiff is entitled to Judgment against him and denies Mr. Woodley is entitled to any relief whatsoever and specifically denies that Plaintiff is entitled to the relief he seeks in subparagraphs (1) through (5).**

WHEREFORE, Defendant, DR. STEPHEN RITZ, respectfully requests this Honorable Court to enter an Order granting judgment in favor of Defendant and against Plaintiff, dismissing his Complaint (Dkt. 1) with prejudice and with costs including attorney fees pursuant to 42 U.S.C. § 1988(b) and for such other relief as this Court deems appropriate and just.

**<u>JURY DEMAND</u>**

**Defendant demands trial by jury.**

## <u>AFFIRMATIVE DEFENSES</u>

Without prejudice to the denials of the allegations contained in Plaintiff's Complaint (Dkt. 1), Defendant, DR. STEPHEN RITZ, without waiving the obligations of Plaintiff to prove every factual element of his claims, states as and for his Affirmative Defenses as follows:

### 1. Qualified Immunity

At all times relevant to Plaintiff's claims, the Defendant charged herein acted in the good faith performance of his official duties without violating Plaintiff's clearly established constitutional rights. Defendant is protected from liability by the doctrine of qualified immunity.

**2. Official Capacity Claim Barred**

To the extent that Plaintiff's claims are against Defendant in his official capacity the claims are barred by the Eleventh Amendment.

**3. Injunctive Relief Barred**

To the extent Plaintiff is suing Defendant for declaratory relief or injunctive relief not intended to address ongoing violations, his requests for such relief are barred by the Eleventh Amendment and the Prison Litigation Reform Act.

Plaintiff was released from prison on or around September 25, 2018. Plaintiff is no longer incarcerated and is therefore no longer subject to obtaining injunctive relief.

**4. Statute of Limitations**

Plaintiff's claims are barred by the statute of limitations. Plaintiff knew or should have known of his claims more than two years prior to his initial complaint on June 6, 2019.

On February 25, 2015, Woodley presented to University of Illinois Hospital for an evaluation by Joan Stelmack, O.D. During this evaluation low vision equipment as needed was recommended.

On November 8, 2016, Mr. Woodley completed an offender's grievance. The nature of his grievance was personal property, staff conduct, medical treatment, ADA Disability Accommodation, HIPPA and ADA Title 2.

In the summary of grievance Mr. Woodley wrote and signed: I am a legally blind Americans with Disability Act (ADA) inmate who received inadequate and insufficient ADA accommodation and medical treatment on the date of October 29, 2016. I asked for a reasonable ADA accommodation to repair or replace my adequate visual aid magnifier which I purchased originally on 5-11-12 with an offender authorization for payment, check number (88 232993 BB) in the amount of $316.64 which was broken by the TACT team in July 2016. (Institutional command staff notified, offender grievance written and ADA coordinator request). Staff ADA accommodation for the recommended visual aids from the UIC Low Vision clinic be purchased and issued immediately (CCTV magnifier for reading, Folding blind walking cane for mobility, misconduct and denied medical treatment occurred 10-29-16 by issuing me a magnifier that does

10

not aid my disability and also by not ordering and issuing me the medical treatment equipment/visual aids recommended by the UIC Low Vision clinic which was concurred (sic) by the Dixon CC Medical Director Dr. Chamberlain, Chief Administrator D. Enloe and ADA coordinator C. Barnhart through the offender grievance process on March 29, 2016. (Grievance number 16-3-208) HIPPA is being violated because other inmates (Wally Tyler K-80881 Rory Floyd k-77914 and Todd Koley M-34511) have to read to me my medical documents because my ADA accommodation was mishandled. I cant currently attend any IDOC educational programs due to lack of medical equipment to read the materials. Relief Requested Cont.: lamp for additional lighting, optics for distance sight and an equal or more powerful digital replacement magnifier the TACT team broke that I purchased initially with my own funds.

On November 20, 2016, Mr. Woodley wrote to the I.D.O.C. Director Administrative Review Board in Springfield, Illinois. The November 20, 2016 letter was stamped received on December 5, 2016. In his November 20, 2016 letter, Woodley wrote:

I am legally blind disabled inmate with Macular Degeneration in both eyes who is at Dixon C.C. Eyeglasses, simple magnification and surgery Do Not correct my vision lost. I am at the will and mercy of inmates to read my confidential medical records, (illegible), because the ADA coordinator, HCU administrator, and Chief Administrator has not repaired or replace with a similar magnifier that was broken by IDOC state and issue ADA accommodation for visual aids recommended by the UIC low vision clinic (U of I, Chicago). Deaf inmates, paralyzed inmates, Dixon Psych Unit inmates and Mental ill inmates all get ADA accommodations and special treatment for their disabilities. With this letter I enclosed an Emergency Grievance, HCU eye diagnoses UIC "Low vision concurred summary, and a memo.

A counselor's response was dated December 6, 2016 to Mr. Woodley's November 6, 2016 grievance. The response stated: Per ADA Coordinator: replacement digital magnifier received by offender 10-29-16 is denied. Offender has received appropriate accommodations at Dixon Correctional Center.

The Administrative Review Board Return of Grievance or Correspondence was received and is dated January 3, 2017 for his November 6, 2016 grievance.

The accrual period in Illinois for Section 1983 deliberate indifference cases is two-years from the time that individual knew or should have known that he had a cause of action. Woodley's alleged claim thus accrued on or before January 3, 2017 as his pleading and grievances alleges that he knew or should have known he had a cause of action as of January 3, 2017.

Woodley had until January 3, 3019 in which to file his cause of action for deliberate indifference against Defendant Dr. Ritz. Plaintiff filed his cause of action on June 6, 2019 in excess of the two-year statute of limitations period.

Plaintiff's Complaint must be based on statute of limitations grounds with prejudice.

**5. Heck v. Humphrey**

To the extent Plaintiff's allegations require the invalidation of any discipline that resulted in the loss of good time credit, these allegations are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

**6. Mootness**

To the extent that Plaintiff is suing the Defendant for declaratory relief or injunctive relief not intended to address ongoing violations, his claim is moot.

**7. Compensatory Damages Barred**

To the extent that Plaintiff is suing the Defendant for compensatory damages for mental or emotional injury suffered without a prior showing of physical injury, his claim is barred by the Prison Litigation Reform Act.

Plaintiff's alleged failure to obtain visual aids did not cause or contribute to injury. Accordingly, plaintiffs claim is barred by the Prison Litigation Reform Act.

**8. Failure to State Claim with Specificity**

Defendant Dr. Ritz personal involvement has not been established with sufficient specificity to state a claim upon which relief may be granted.

Defendant's personal involvement has not been properly pled in Plaintiff's Complaint.

**9. Res Judicata.**

To extent Plaintiff has previously litigated the same issues in a prior action that are now involved in this lawsuit, Plaintiff's suit is barred by the doctrine of res judicata.

Plaintiff has previously brought a lawsuit for the same or similar complaints in the United States District Court for the Northern District of Illinois, Western Division, No. 3:18-cv-50050, which is ongoing and currently subject to several motions to dismiss. This case involves the identical set of alleged operative facts and derives from the same transaction or occurrence. Accordingly, the instant case should be dismissed.

**10. Failure to Follow Medical Advice and Exercise Reasonable Care.**

a.      The sole proximate cause of the injuries and damages alleged by Plaintiff was his failure to exercise reasonable care for his own well-being.

b.      Plaintiff had a duty to follow reasonable medical advice, attend appointments, recommendations, treatment, or procedures provided to him by medical staff and providers for the treatment and management of his claimed conditions.

c.      Plaintiff failed to exercise reasonable care and follow reasonable medical advice, attend appointments, recommendations, or procedures in one or more of the following respects, which were the sole proximate cause of the injuries and damages Plaintiff claims in this case:

i.      Failed to follow reasonable medical advice and recommendations;

ii.      Failed to be truthful to medical staff and state his symptoms, conditions, and behavior to Defendants;

iii.      Failed to exercise reasonable care for his own safety and well-being;

iv.      Failed to attend his scheduled appointments;

13

      v.      Failed to undergo recommended and reasonable medical treatment; and

      vi.     Was otherwise careless or caused harm to himself.

     d.     Plaintiff's actions were the sole proximate cause of any injuries which are claimed in his Complaint and, therefore, this Defendant is not liable to the Plaintiff for the claims asserted herein.

     WHEREFORE, Defendant, DR. STEPHEN RITZ, respectfully requests this Honorable Court to enter an Order granting judgment in favor of Defendant and against Plaintiff, dismissing his Complaint (Dkt. 1) with prejudice and with costs including attorney fees pursuant to 42 U.S.C. § 1988(b) and for such other relief as this Court deems appropriate and just.

Respectfully Submitted,
DR. STEPHEN RITZ

By: /s/ Robert S. Tengesdal
*One of the Attorneys for Defendant*

Robert S. Tengesdal (#6288650)
Francisco J. Espinosa (#6326869)
BOLLINGER CONNOLLY KRAUSE LLC
500 West Madison Street, Suite #2430
Chicago, IL 60661
Tel: (312) 253-6200
Fax: (312) 253-6201
rtengesdal@bollingertrials.com
fespinosa@bollingertrials.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2019, I caused the foregoing document to be filed electronically with the Clerk of the Court through ECF. All of the participants in the case listed below will be served by the CM/EFC system:

## **STEPHON WOODLEY vs. DR. STEPHEN RITZ**
### **COURT #19 cv 50136**

Service List
Attorney for Plaintiff:
Stephen H. Weil
Weil & Chardon, LLC
333 S. Wabash Avenue
Suite 2700
Chicago, IL 60604
(312) 585-7404
steve@weilchardon.com

By:____/s/___Francisco J. Espinosa

.